IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD WILLIAMS, | No. C 12-1691 RMW(PR) |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE SETTLEMENT PROGRAM |
| v. | |
| R. PEREZ, et al., | |
| Defendants. | (Docket Nos. 70, 71, 100, 102.) |

Plaintiff, a state prisoner proceeding pro se, filed a second amended civil rights complaint. On August 11, 2014, defendants filed a motion for summary judgment. Plaintiff has filed an opposition to defendants' motion for summary judgment, and defendants have filed a reply.[1] For the reasons below, defendants' motion for summary judgment is DENIED.[2]

---

[1] Plaintiff has also filed an unauthorized sur-reply. (Docket No. 99.) Defendants have filed a motion to strike plaintiff's sur-reply, and plaintiff has filed a motion to strike the defendants' motion. (Docket Nos. 100, 102.) Defendants' motion is sought on the ground that plaintiff did not seek permission to file a sur-reply, as required by the Northern District of California's Local Rule 7-3. Because plaintiff's sur-reply is indeed unauthorized, and the court does not rely on it in its analysis of defendants' motion for summary judgment, defendants' motion is GRANTED. (Docket No. 100.) Plaintiff's sur-reply (docket no. 99) is stricken. Plaintiff's motion to strike defendants' motion (docket no. 102), thus, is DENIED.

[2] Plaintiff's motion to cross-examine defendants' witnesses is DENIED without prejudice. (Docket No. 70.)

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Settlement Program
P:\PRO-SE\RMW\CR.12\Williams691msj.wpd

# BACKGROUND[3]

On March 29, 2011, plaintiff was ducated to the A-yard clinic to the medical line for treatment. (Sec. Am. Compl. ¶ 1.) When plaintiff was called from his holding cell for his appointment with Dr. Daniel, plaintiff noticed defendant Correctional Officer R. Perez sitting in a chair outside of Dr. Daniel's door, blocking plaintiff's entrance. (Id. ¶¶ 2-3.) After Perez allowed plaintiff to go into Dr. Daniel's office for treatment, Perez returned to his seat. (Id. ¶¶ 2-3.) Dr. Daniel and plaintiff discussed plaintiff's chronic neck and back problems. (Id. ¶ 4.) When plaintiff began asking Dr. Daniel questions about the types of treatment available, Perez told plaintiff to stop asking questions. (Id. ¶ 5.) When plaintiff informed Perez that Perez was violating CDCR policy by interfering in medical affairs, Perez became very angry. (Id. ¶¶ 5-6.) Perez yelled at plaintiff and directed him to get out of Dr. Daniel's office because the appointment was over. (Id. ¶ 6.) Plaintiff complied, but informed Perez that plaintiff would be filing an administrative grievance against him. (Id.) Perez became even more angry, and followed plaintiff down the hall while screaming at plaintiff to get out. (Id. ¶ 7.) Perez continued to follow plaintiff outside of his assigned work station, and directed plaintiff to get against the fence that was directly in front of A-clinic. (Id. ¶¶ 9-10.) Plaintiff complied and saw defendant Correctional Officer Juarez walking over toward them. (Id. ¶¶ 11-12.)

Perez told plaintiff to spread his legs further, although plaintiff could not do so because of his back pain. (Id. ¶ 14.) Then Perez started to kick the insides of plaintiff's legs, and did so severely enough to cause each leg to go "airborn" each time. (Id. ¶ 15.) Juarez watched Perez do this, and although Juarez looked uncomfortable, Juarez did nothing to stop Perez. (Id. ¶ 16.) At this time, inmates at the adjacent yard began yelling at the officers to stop assaulting plaintiff. (Id. ¶ 17.)

Perez then leaned over to plaintiff and told him that if plaintiff did not drop an unrelated federal lawsuit against Dr. Bright and Dr. Sepulveda, Perez would make sure that plaintiff was assaulted wherever he went. (Id. ¶ 18.) Then Perez ordered plaintiff to get on the ground and

---

[3] The following facts are undisputed and taken in the light most favorable to plaintiff, unless otherwise indicated.

1  "prone out." (Id. ¶ 20.) Plaintiff began to explain to Perez that plaintiff had an accommodation
2  chrono exempting him from "proning out." (Id. ¶ 21.) As plaintiff was reaching into his pocket
3  to show Perez the chrono, Perez yelled, "he tried to hit me!" and then Perez and Juarez tackled
4  plaintiff to the ground. (Id. ¶¶ 22-23.) Plaintiff saw defendant Correctional Officer Canchola
5  watching, and plaintiff asked her if she was going to stop Juarez or Perez. (Id. ¶ 24.) Plaintiff
6  asserts that up until this point, plaintiff had not attempted to hit Perez. (Id. ¶ 25.)

7  Once plaintiff was on the ground, plaintiff resisted in an attempt to protect his stomach.
8  (Id. ¶ 26.) Knowing that plaintiff suffered from back and neck pain, Perez placed his leg across
9  plaintiff's upper back and throat, causing plaintiff's breathing passage to close. (Id. ¶ 27.)
10 Plaintiff then heard Correctional Officer Collier sound the alarm, and Perez telling Lieutenant
11 Ross that plaintiff had assaulted him. (Id. ¶¶ 28-29.) Plaintiff was placed in a cage inside the
12 Annex building, and called for help, but soon lost consciousness because of his difficulty
13 breathing. (Id. ¶¶ 32-33.) When plaintiff awoke, medical staff was surrounding him. (Id. ¶ 33.)

14 Defendants' version of the facts are markedly different. Defendants asserts that during
15 plaintiff's appointment with Dr. Daniel, Perez and Juarez were present, and plaintiff was being
16 loud and disrespectful. (Perez Decl. ¶ 4.) Perez warned plaintiff that if plaintiff continued to be
17 disrespectful, Perez would escort him out. (Id.) Plaintiff began swearing, and Perez and Juarez
18 escorted plaintiff out. (Id.) During the escort, plaintiff continued to be loud and disrespectful.
19 (Id.) Perez believed that because of plaintiff's behavior, plaintiff should be placed in mechanical
20 restraints, so Perez ordered plaintiff to prone out for a clothed search before placing the restraints
21 on him. (Id. ¶ 5.) Plaintiff placed himself against the fence, but refused to spread his legs. (Id.)
22 Perez tapped the inside of plaintiff's right ankle area. (Id.)

23 According to defendants, plaintiff then came off the fence, so Perez ordered plaintiff to
24 prone out. (Id. ¶ 6.) Plaintiff did not do so, and instead, attempted to hit Perez. (Id.) The Yard
25 Observation Officer sounded the alarm. (Id.) Juarez assisted Perez in taking plaintiff down to
26 the ground. (Id.) Mechanical restraints were placed on plaintiff, and plaintiff was taken to a
27 holding cell for medical evaluation. (Id.)
28 Plaintiff was subsequently charged with battery on a police officer. (Perez Decl., Ex. A.;

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Settlement Program
P:\PRO-SE\RMW\CR.12\Williams691msj.wpd        3

1  Sec. Am. Compl. ¶ 35.)  Plaintiff was found guilty and assessed 150 days of good time credits.

## ANALYSIS

A.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, Inc., 477 U.S. at 248 (1986).  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with

1  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
2  forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152,
3  1158 (9th Cir. 1999).

4  B.     Legal Claims

5      1.     Excessive Force

6  The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments
7  Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992).  When prison
8  officials stand accused of using excessive force in violation of the Eighth Amendment, the core
9  judicial inquiry is whether force was applied in a good faith effort to maintain or restore
10 discipline, or maliciously and sadistically for the very purpose of causing harm.  Id. at 6-7.  In
11 determining whether the use of force was for the purpose of maintaining or restoring discipline,
12 or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for
13 application of force, the relationship between that need and the amount of force used, the extent
14 of any injury inflicted, the threat reasonably perceived by the responsible officials, and any
15 efforts made to temper the severity of a forceful response.  Id. at 7.  In reviewing these factors,
16 courts must accord prison administrators wide-ranging deference in the adoption and execution
17 of polices and practices to further institutional order and security.  Jeffers v. Gomez, 267 F.3d
18 895, 917 (9th Cir. 2001).

19         a.     Heck bar

20 Defendants argue that plaintiff's excessive force claim is barred by Heck v. Humphrey,
21 512 U.S. 477 (1994) in light of plaintiff's guilty finding of battery on a police officer.  Heck
22 holds that in order to state a claim for damages for an allegedly unconstitutional conviction or
23 term of imprisonment, or for other harm caused by actions whose unlawfulness would render a
24 conviction or sentence invalid, a plaintiff asserting a violation of 42 U.S.C. § 1983 must prove
25 that the conviction or sentence has been reversed or declared invalid.  Id. at 486-87.  Heck's
26 rationale bars a claim for damages for harm caused by the unconstitutional deprivation of
27 good-time credits because such a claim necessarily calls into question the lawfulness of the
28 plaintiff's continued confinement, insofar as it implicates the duration of the plaintiff's sentence.

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Settlement Program
P:\PRO-SE\RMW\CR.12\Williams691msj.wpd       5

1	Defendants argue that plaintiff's excessive force claim is barred under Heck because, if
2	the excessive force claim were proven, it would necessarily imply the invalidity of the finding of
3	guilt on the charge of battery on a peace officer.
4	The Ninth Circuit has made clear, however, that Heck does not bar all such excessive
5	force actions.  See Hooper v. County of San Diego, 629 F.3d 1127 (9th Cir. 2011) (Fourth
6	Amendment excessive force claim not Heck-barred because "[a] holding in Hooper's § 1983
7	case that the use of the dog was excessive force would not negate the lawfulness of the initial
8	arrest attempt, or negate the unlawfulness of [Hooper's] attempt to resist it [when she jerked her
9	hand away from Deputy Terrell]."); Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005)
10	("[A] § 1983 action is not barred under Heck unless it is clear from the record that its successful
11	prosecution would necessarily imply or demonstrate that the plaintiff's earlier conviction was
12	invalid.").
13	In Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) (en banc), the plaintiff had been
14	convicted of resisting a police officer under California Penal Code section 148, and claimed that
15	the officer had used excessive force against him.  Id. at 694.  In order to determine whether the
16	excessive force claim was barred under Heck, the Ninth Circuit looked to the elements of a
17	conviction for resisting a police officer under section 148, and found that an essential element of
18	such a conviction is that the police officer was "engaged in the performance of his official
19	duties."  Id. at 695.  Under California law, if such element is admitted or proved, the police
20	officer necessarily was engaged in "lawful" conduct, which, in turn, necessarily excludes the use
21	of excessive force.  Id. at 695-96.  The Ninth Circuit thus concluded that where a plaintiff has
22	been convicted under section 148 for resisting a police officer during the course of an arrest, his
23	subsequent § 1983 claim that the police officer used excessive force at the time the arrest was
24	effected would, if successful, necessarily undermine the conviction, and would be barred under
25	Heck.  Id. at 697-98.  Looking to the record before it in Smith, the Ninth Circuit could not
26	determine whether the acts underlying the conviction occurred during the course of the
27	plaintiff's arrest; accordingly, the Ninth Circuit reversed the district's court's grant of summary
28	judgment, which ruling had been predicated on Heck.  Id. at 699.

In the instant action, defendants have not shown that if plaintiff were to prevail on his excessive force claims the validity of the finding that he committed battery on a peace officer necessarily would be implicated. Defendants have not set forth the elements of the charge of which plaintiff was found guilty, battery on a peace officer under California Code of Regulations tit. 15, § 3005(d). Consequently, because defendants have not shown that a finding of their use of excessive force would necessarily negate an element of the battery offense, the court cannot conclude that plaintiff's claims are barred under Heck. As Smith made clear, a § 1983 claim alleging the use of excessive force will be barred under Heck only where "it is clear from the record that its successful prosecution would necessarily" imply the invalidity of the plaintiff's underlying conviction. Smith, 394 F.3d at 699. Accordingly, the court will deny defendants' motion to dismiss plaintiff's excessive force claim as barred under Heck. See, e.g., Sekerke v. Kemp, No. 11cv2688 BTM (JMA), 2013 WL 950706 (S.D. Cal. March 12, 2013) (denying summary judgment because defendants failed to show that plaintiff's excessive force claims were necessarily inconsistent with plaintiff's adjudication of guilt for battery on a police officer); Simpson v. Thomas, No. 2:03-cv-0591 MCE GGH, 2009 WL 1327147 at *4 (E.D. Cal. May 12, 2009) (success on the plaintiff's Eighth Amendment excessive force claim would not necessarily invalidate his battery conviction pursuant to Cal. Code Regs., tit. 15 § 3005(c) because "even if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery"); Gabalis v. Plainer, No. CIV S-09-0253-CMK, 2010 WL 4880637 at *7 (E.D. Cal. 2010) ("It is possible for defendants to have used excessive force and for plaintiff to have attempted to assault a correctional officer. Thus, success on plaintiff's civil rights claims would not necessarily imply that the guilty finding and resulting loss of good-time credits is invalid."); Candler v. Woodford, No. C 04-5453 MMC, 2007 WL 3232435 at *7 (N.D. Cal. Nov. 1, 2007).

Accordingly, defendants' motion for summary judgment based on a Heck bar is DENIED.

    b.  <u>Analysis</u>

Taking the evidence in the complaint as true, and drawing all inferences therefrom in plaintiff's favor, there is a genuine issue of material fact as to whether defendants' use of force,

1  i.e., Perez's kicking of plaintiff's legs, and subsequently, Perez and Juarez's tackling of plaintiff
2  onto the ground and cutting off plaintiff's oxygen, was excessive.
3     Defendants argue that plaintiff has not provided evidence demonstrating that defendants
4  acted with malicious intent to cause harm. In support of defendants' argument, defendants rely
5  on disputed facts. Accepting plaintiff's account as true, as this court must, an inference could
6  certainly be drawn that defendants assaulted plaintiff for the purpose of causing him harm.
7     Having concluded that genuine issues of material fact exist as to whether defendant used
8  excessive force against plaintiff in violation of the Eighth Amendment, the court next addresses
9  whether he is entitled to qualified immunity. The defense of qualified immunity protects
10 "government officials . . . from liability for civil damages insofar as their conduct does not
11 violate clearly established statutory or constitutional rights of which a reasonable person would
12 have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of
13 qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual
14 constitutional right and whether such right was clearly established such that it would be clear to
15 a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson v.
16 Callahan, 129 S. Ct. 808, 818 (2009). Regarding the first prong, the threshold question must be,
17 taken in the light most favorable to the party asserting the injury, do the facts alleged show the
18 officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). The
19 inquiry of whether a constitutional right was clearly established must be undertaken in light of
20 the specific context of the case, not as a broad general proposition. Id. at 202. The relevant,
21 dispositive inquiry in determining whether a right is clearly established is whether it would be
22 clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.
23    The court finds granting summary judgment on the ground of qualified immunity is
24 improper in this case. Resolving all factual disputes in favor of plaintiff, the court concludes that
25 defendant violated plaintiff's clearly established right to be free from excessive force. See
26 Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's
27 use of excessive force was clearly established by 1994"). Granting summary judgment on the
28 ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in

light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000).

Here, under plaintiff's version of the facts, no reasonable officer could believe that Perez and Juarez's actions were permitted under the Eighth Amendment. In addition, where, as here, "the material, historical facts are in dispute," the availability of qualified immunity does not turn solely on a question of law, and the district court is precluded from granting summary judgment on qualified immunity grounds. See Torres v. City of Los Angeles, 548 F.3d 1197, 1211 (9th Cir. 2008) (holding that the existence of issues of material fact precludes a court from granting judgment as a matter of law on qualified immunity grounds, and observing that "sending factual issues to the jury but reserving to the judge the ultimate 'reasonable officer' determination leads to serious logistical difficulties").

In sum, accepting plaintiff's allegations as true, there are genuine issues of fact as to whether Perez and Juarez violated plaintiff's constitutional rights. Accordingly, they are not entitled to summary judgment on the merits or based on qualified immunity.

### 2. Deliberate indifference to safety / failure to intervene

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Allegations in a pro se complaint sufficient to raise an inference that the named prison officials acted with deliberate indifference – i.e, that they knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it – states a "failure-to-protect" claim. Hearns v. Terhune, 413 F.3d 1036, 1041-42 (9th Cir. 2005). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to safety by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id.

Here, plaintiff claims that while he was against the fence, Canchola was watching the events unfold from the doorway of the A-clinic. (Doc. No. 82; Doc. No. 80 at 4.) Plaintiff

1  asserts that Canchola and Juarez watched Perez kick plaintiff 7-8 times in the legs, and then
2  Canchola watched as Perez and Juarez slammed plaintiff to the ground.  (Doc. No. 80 at 4; Sec.
3  Am. Compl. ¶¶ 15-16, 24.)  In contrast, Canchola declares that she did not witness these events
4  at all because she was assigned to Facility A's medical clinic and was required to remain inside
5  the clinic.  (Canchola Decl. ¶¶ 4-5.)

6  Viewing the facts in the light most favorable to plaintiff, there are material facts in
7  dispute regarding whether Canchola and Juarez knew that plaintiff faced a substantial risk of
8  serious harm, had an opportunity to intervene, and failed to do so.

9  Accordingly, defendants' motion for summary judgment is DENIED.

C. <u>Referral to Pro Se Prisoner Settlement Program</u>

Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the excessive force claim set forth above, as well as plaintiff's state law claims.  The proceedings will consist of one or more conferences as determined by Judge Vadas.  The conferences shall be conducted with defendant, or his representative, attending by videoconferencing if he so chooses.  If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a motion from plaintiff for appointment of counsel.

**CONCLUSION**

1. Defendants' motion for summary judgment is DENIED.

2. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims in this action, as described above. The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings. If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel, and the court will then set this matter for trial.

1    3.    The clerk of the court shall mail a copy of this order, to Judge Vadas in Eureka, California.

2    4.    The instant case is STAYED pending the settlement conference proceedings. The clerk shall ADMINISTRATIVELY CLOSE this case until further order of the court.

IT IS SO ORDERED.

DATED: _____

/s/ Ronald M. Whyte
RONALD M. WHYTE
United States District Judge

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Settlement Program
P:\PRO-SE\RMW\CR.12\Williams691msj.wpd        11

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JAMES EDWARD WILLIAMS,

        Plaintiff,

  v.

R. PEREZ et al,

        Defendant.

Case Number: CV12-01691 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 29, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James Edward Williams V-54214
Kern Valley State Prison
D-5-113
P.O. Box 5104
Delano, CA 93216

Dated: January 29, 2015

                                      Richard W. Wieking, Clerk
                                      By: Jackie Lynn Garcia, Deputy Clerk